IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANASTASIA INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> EM ONLINE PTY LTD, *et al.*, <br><br> Defendants. | Case No. 13-CV-2919 (KBF) |

**DECLARATION OF JAMES P. DUFFY, IV IN SUPPORT OF
<u>EM ONLINE'S STATEMENT OF REASONABLE ATTORNEY'S FEES AND COSTS</u>**

I, James P. Duffy IV, hereby declare in support of EM Online Pty Ltd ("EM Online")'s statement of reasonable attorney's fees and costs as follows:

1. I am a partner at K&L Gates LLP.

2. I am based in K&L Gates' New York office.

**I.     QUALIFICATIONS.**

3. My curriculum vitae is attached hereto as **Exhibit A.**

4. I am admitted to the New York Bar, as well as to the U.S. Supreme Court, the U.S. Court of Appeals for the Second Circuit, and the U.S. District Courts for the Southern and Eastern Districts of New York.

5. I have experience with the rates charged for legal representation for complex commercial matters in New York. I graduated from St. John's University, School of Law in 2001, and have worked at Shaw Pittman, Clifford Chance, Hughes Hubbard & Reed, LLP, and DLA Piper LLP. I also clerked for the Honorable Thomas C. Platt in the Eastern District of New York. I am familiar with the rates customarily charged by lawyers appearing in in the Southern District of New York, particularly in complex commercial cases involving foreign defendants. K&L Gates, like all of my previous firms, routinely conducts market analyses to ensure that its

billing is competitive, for lawyers in all of its offices. At multiple New York firms, I have been involved with pitches, client intake, alternative fee arrangements, contingency fee matters, and have negotiated bills with clients for legal services in New York, including for matters in the Southern District of New York. I also have experience with attorney's fees awards and sanctions requiring the payment of attorney's fees, and have published on the subject. *See Court Sanctions Counsel for Frivolous Challenge to Arbitration Award*, INTERNATIONAL LAW OFFICE (August 30, 2012).

## II.   MATERIALS REVIEWED.

6.   In preparing this declaration, I have relied on my experience, as well as my review of all docket filings in the above-captioned matter, Mr. Hartmere's declaration, the billing invoices attached thereto, and the website biographies for Mr. Hartmere, Mr. Wright, and Mr. DePalma, and conversations with Mr. Hartmere.

## III.   OPINIONS.

7.   The rates charged by Venable LLP ("Venable") in this matter are reasonable for a complex commercial case threatening $1.5 million in exposure pending in the Southern District of New York, and involving foreign parties like EM Online and Defendant Natunen.

8.   Mr. Hartmere's rate of $540 per hour is within the range of reasonableness for a lawyer practicing in the Southern District with 12 years of experience, and with demonstrated expertise in the area of false advertising and trademark infringement under the Lanham Act. Mr. Wright's rate of $615 per hour is also within the range of reasonableness for a lawyer practicing in the Southern District with 17 years of experience in the areas of false advertising and trademark infringement arising under the Lanham Act. (In fact, because Mr. Wright is based out of Venable's DC office, the client benefitted from a lower rate than what would have been charged by a partner based out of Venable's New York office.) Similarly, Mr. DePalma's rate of

$495 per hour is reasonable for a senior associate with seven years of experience in the area of false advertising and trademark infringement arising under the Lanham Act. (Like Mr. Wright, Mr. DePalma is not based out of Venable's New York office. Accordingly, his rate of $495 per hour is lower than what would have been charged by a similarly-experienced senior associate based out of New York.)

9. The time spent litigating this matter was reasonable. I have reviewed the relevant invoices to check for overbilling, churning, and to see whether block billing resulted in any questionable entries. I did not find a single instance of overbilling or churning. Moreover, Venable staffed this case with only three attorneys (one New York counsel, one partner, and one associate.) This provided for significant economies of scale, and limited the amount of billing that would have otherwise resulted from a larger team. In my opinion, the case was also appropriately leveraged. Although Mr. Hartmere billed more hours, drafting work and legal research was largely handled by Mr. DePalma, the attorney with the lowest rate. This, and the fact that Mr. DePalma was already experienced in Lanham Act matters, resulted in significant savings to the client. Accordingly, in my opinion, the amount of $51,920 in fees and $2,975.75 in costs (as of October 4, 2013) is reasonable.

10. In my opinion, there is no reason to make any downward adjustment based on the factors identified in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). If anything, the *Johnson* factors would justify a higher fee award than what was actually incurred. I briefly address the *Johnson* factors below:

    a.    Time and labor required. In my opinion, Venable put in exactly the time and labor required to successfully defend against this lawsuit. Indeed, the

        client benefitted from having experienced attorneys who did not need to "reinvent the wheel." Accordingly, the billing was likely lower than it would have been with less experienced attorneys.

b.     Novelty and difficulty of the questions and skill requisite to perform the legal service properly. The Lanham Act is a federal statute, and claims arising under it require expertise to litigate properly. Mr. Hartmere, Mr. Wright, and Mr. DePalma have that expertise and should be permitted to charge for it.

c.     Preclusion of other employment by the attorney due to his acceptance of the case, customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances. Venable charged at their customary market rates for this type of work and EM Online agreed to pay it. In my opinion, this is definitive proof of the market rate for Venable's services, and it is consistent with the rates charged by other New York law firms.

d.     Amount involved and results obtained. This factor weighs heavily in favor of granting EM Online the full amount of the fees incurred. EM Online was threatened with over $1.5 million in exposure, and paid legal fees of slightly over $50 thousand to completely defeat the case. Indeed, when Venable was retained, EM Online was in default. Mr. Hartmere, Mr. Wright, and Mr. DePalma successfully got EM Online out of default, sought to keep costs down by requesting voluntary dismissal from Anastasia, successfully moved to dismiss after Anastasia refused, and

       obtained a fee award. EM Online could not ask for a better result at a lower cost.

e.    Experience, reputation, and ability of the attorneys. As I explained above, the attorneys staffed on this case were undoubtedly skilled and this resulted in less time billed than would have resulted with cheaper (but less experienced) attorneys.

f.    Undesirability of the case and nature and length of the professional relationship with client. I understand these factors are neutral.

g.    Awards in similar cases. I have reviewed the case law cited in EM Online's Statement of Reasonable Fees and in Mr. Hartmere's declaration. I have nothing further to add to this *Johnson* factor.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge and belief.

_____
James P. Duffy, IV

Dated: October 16, 2013
       New York, New York