IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANASTASIA INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> EM ONLINE PTY LTD, *et al.*, <br><br> Defendants. | Case No. 13-CV-2919 (KBF) |

**DECLARATION OF MICHAEL C. HARTMERE IN SUPPORT OF
EM ONLINE'S STATEMENT OF REASONABLE ATTORNEY'S FEES AND COSTS**

I, Michael C. Hartmere, hereby declare in support of EM Online Pty Ltd ("EM Online")'s statement of reasonable attorney's fees and costs as follows:

1. I represent EM Online in this matter.

2. I am of Counsel in the law firm of Venable LLP ("Venable").

**I.   STAFFING.**

3. Venable leanly staffed this case with one New York counsel (me), one partner (Damon Wright), and one associate (Nicholas DePalma). All three attorneys have extensive experience handling defamation, Lanham Act false advertising, and trademark infringement litigation.

4. My website biography is attached as **Exhibit A**. By way of summary, I graduated from Fordham University School of Law in 2001, where I served as the Senior Notes & Comments Editor of the Fordham Intellectual Property Media & Entertainment Law Journal. After graduation, I served as Law Clerk to the Honorable Kevin Thomas Duffy, U.S. District Court for the Southern District of New York. I am admitted to practice in this Court, the Eastern District of New York, the Connecticut Bar, and the New York Bar. My practice focuses on defending clients accused of fraud and deceptive marketing practices.

5.      Mr. Wright is a partner at Venable LLP who focuses on commercial litigation, including intellectual property and advertising litigation under the Lanham Act. Mr. Wright's website biography is attached as **Exhibit B**. By way of summary, Mr. Wright graduated from George Mason University School of Law in 1996, clerked for the Honorable Barry R. Poretz, U.S. District Court for the Eastern District of Virginia, is AV® Peer-Review Rated by Martindale-Hubbell, is the President of the N.Va. Chapter of the Federal Bar Association, and is a Master with the William B. Bryant Inn of Court. Among many cases illustrating his experience, Mr. Wright was counsel of record in *Tecumseh Poultry LLC v. Perdue Holdings, Inc.*, 2012 WL 3018255 (D. Neb. July 24, 2012), *Grunley Walsh LLP v. Raap, et al.*, 386 Fed. Appx. 455, 2010 WL 2640519 (4th Cir. June 30, 2010), and *Tactica Intern., Inc. v. Atlantic Horizon Intern.*, Inc. 154 F. Supp. 2d 586 (S.D.N.Y. 2001), all of which concerned allegations of trademark infringement or false advertising between competitors.

6.      We were assisted by Nicholas DePalma, an associate. Mr. DePalma's website biography is attached as **Exhibit C**. Mr. DePalma graduated first in his class from William & Mary Law School in 2006, where he was selected to the Order of the Coif and Order of Barristers. Mr. DePalma is a Barrister in the George Mason American Inn of Court, and has experience litigating fraud and false advertising matters brought under the Lanham Act, including in this Court. For example, Mr. DePalma was counsel of record in *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446 (S.D.N.Y. 2011). Mr. DePalma was also counsel of record in a significant Lanham Act matter involving Tyson Foods, Inc. *See Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 547 F. Supp. 2d 491 (D. Md. 2008) and *Sanderson Farms, Inc. v. Tyson Foods, Inc.*, 549 F. Supp. 2d 708 (D. Md. 2008).

## II. FEES AND EXPENSES BILLED.

7.  True and correct copies of the relevant invoices are attached to this Declaration. They represent the legal fees and expenses that EM Online has incurred to date:

| No. | Summary of Work | Legal fees | Expenses | |
|---|---|---|---|---|
| 1427317 (June 2013) | Come up to speed; legal research and draft motion to vacate default; confer with client and opposing counsel. | $13,110 | | **Exhibit D** |
| 1430949 (July 2013) | Vacate default; confer with client and opposing counsel regarding motion to dismiss; legal research and draft motion to dismiss. | $21,523.00 | 1,037.06 | **Exhibit E** |
| 1438140 (Aug. 2013) | Review second amended complaint, legal research and draft motion to dismiss; locate and confer with Mr. Natunen; prepare declaration explaining lack of connection between Mr. Natunen and EM Online. | $12,073.50 | $1,780.04 | **Exhibit F** |
| WIP (Sept. – Oct. 4, 2013) | Legal research and draft reply in support of motion to dismiss and confer with opposing counsel regarding voluntary dismissal. | $5,213.50 | $158.65 | **Exhibit G** |
| | | Total: $51,920 | Total: $2,975.75 | |

8.  For ease of reference, the rates and hours (as of October 4, 2013) of the attorneys who worked on this case are as follows:

| Attorney | Graduation year | Rate | Hours |
|---|---|---|---|
| DePalma | 2006 | $495 | 33.4 |
| Hartmere | 2001 | $540 | 37.3 |
| Wright | 1996 | $615 | 22.7 |

3

### III. REASONABLENESS OF RATES.

9. In *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, the Second Circuit held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson factors*; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *See* 522 F.3d 182, 189 (2d Cir. 2007).

10. The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to his acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). I address each of these factors below:

    a. **Time and labor required.** Here, as the attorney who appeared before the Court in this case, and as an attorney with experience litigating here and all over the country in matters involving fraud and deceptive marketing practices, my colleagues and I put in exactly the time and labor required to win the case. This is reflected in the detailed billing invoices attached as Exhibits D-G. We leanly staffed this matter (with only three attorneys), conferred with the client and with opposing counsel to seek agreement

        wherever possible, and did exactly what was required to defend EM Online.

b. **Novelty and difficulty of the questions.** This case involved Lanham Act based claims, which require specialized experience and expertise to address. Moreover, the manner in which Anastasia prosecuted the case increased its difficulty. I had multiple conversations with Anastasia's counsel in which I requested that Anastasia dismiss the case, particularly in light of my client's declaration stating that he had no connection with www.anastasiadatefraud.com, and in light of Mr. Natunen's filing and declaration in which Mr. Natunen disavowed any connection between the parties. Instead of cooperation, we were met with resistance and amended pleadings alleging additional claims against EM Online and attaching additional exhibits. Anastasia also opposed the motion to dismiss the second amended complaint and cited inapposite cases, which we were required to carefully review and distinguish in our reply briefing.

c. **Skill required to perform the legal service properly.** This matter was a Lanham Act case brought by a wealthy competitor. *See* Ann VanderMey, The mail-order bride boom, Anastasia interview with *Fortune*, available at http://tech.fortune.cnn.com/2013/04/09/the-mail-order-bride-boom/ (last visited Oct. 11, 2013) (noting that Anastasia disclosed that it made $110 million in 2012 and projected earnings of $140 million in 2013). Anastasia's wealth increased the risk that it would litigate aggressively and threaten EM Online's business. EM Online was justified in retaining

lawyers with particular knowledge, skill, and experience in defending false advertising cases of similar magnitude.

d. **Preclusion of other employment, customary fee, whether the fee is fixed or contingent.** These factors all weigh in favor of granting EM Online the full amount incurred because all Venable attorneys billed EM Online at their customary rates. In the absence of this case, the Venable attorneys would have taken other work that would have paid out at their same rate. Further, because this was not a contingent fee representation, EM Online had to bear the full amount of the fees and expenses.

e. **Time limitations imposed by the client or the circumstances.** This factor is neutral.

f. **Amount involved and results obtained.** The Second Amended Complaint requested "money damages in an amount not less than $500,000," plus "treble damages," "punitive damages," and "reasonable attorneys' fees," plus injunctive relief (SAC at pp. 12-13). Thus, this lawsuit threatened EM Online with over $1.5 million dollars in damages. When Venable was retained, EM Online was also in default. Venable successfully vacated the default, and the Court granted the motion to dismiss and awarded fees. Venable obtained excellent results.

g. **Experience, reputation, and ability of the attorneys.** As demonstrated by the website biographies attached as Exhibits A-C, the attorneys who litigated this case have exemplary credentials and significant experience, reputation, and ability, particularly in Lanham Act matters.

lawyers with particular knowledge, skill, and experience in defending false advertising cases of similar magnitude.

d. **Preclusion of other employment, customary fee, whether the fee is fixed or contingent.** These factors all weigh in favor of granting EM Online the full amount incurred because all Venable attorneys billed EM Online at their customary rates. In the absence of this case, the Venable attorneys would have taken other work that would have paid out at their same rate. Further, because this was not a contingent fee representation, EM Online had to bear the full amount of the fees and expenses.

e. **Time limitations imposed by the client or the circumstances.** This factor is neutral.

f. **Amount involved and results obtained.** The Second Amended Complaint requested "money damages in an amount not less than $500,000," plus "treble damages," "punitive damages," and "reasonable attorneys' fees," plus injunctive relief (SAC at pp. 12-13). Thus, this lawsuit threatened EM Online with over $1.5 million dollars in damages. When Venable was retained, EM Online was also in default. Venable successfully vacated the default, and the Court granted the motion to dismiss and awarded fees. Venable obtained excellent results.

g. **Experience, reputation, and ability of the attorneys.** As demonstrated by the website biographies attached as Exhibits A-C, the attorneys who litigated this case have exemplary credentials and significant experience, reputation, and ability, particularly in Lanham Act matters.

6

      h.    **Undesirability of the case.** This factor is neutral.

      i.    **Nature and length of the professional relationship with client.** This factor is neutral.

      j.    **Awards in similar cases.** Fee awards under the Lanham Act are often significant. *See Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) (affirming $836,899.99 fee award granted after summary judgment, but reversing in part due to interpreter costs and certain unsubstantiated costs); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010) (affirming $72,747 fee award granted after summary judgment); *In re: Outside Tire Litig.*, 748 F. Supp. 2d 557, 569 (E.D. Va. 2010) (awarding $632,377.50 in attorney's fees after trial). Here, the amounts sought are well within typical Lanham Act fee awards, and are actually significantly less given the procedural posture of the case.

11.    Venable's rates are also below rates charged by comparable law firms. *See* Catherine Dunn, Comparing Firm Billing Rates by Practice, City, Size, Corporate Counsel July 15, 2013, http://www.law.com/jsp/nj/PubArticleNJ.jsp?id=1202610741068&Comparing_Firm_Billing_Rates_by_Practice_City_Size&slreturn=20130912130124 (last visited Oct. 11, 2013) (reporting that average rate for a law firm partner in New York is $755.68).

### IV.   OPINION ON WORK PERFORMED, RATES, AND FEES INCURRED.

12.    Based on the foregoing, it is my opinion that the rates charged by Venable in this matter are reasonable. The defamation, false advertising, and trademark infringement claims in this case required counsel with specialized knowledge, skill and experience. EM Online retained

such counsel in recognition of this and the fact that Anastasia's claims presented the possibility of at least $1.5 million damages as well as severe reputational harm to EM Online.

13. Based on the foregoing, it is also my opinion that the time spent litigating this matter was necessary and reasonable. I have reviewed the relevant invoices and there are no instances of overbilling, churning, or questionable entries. Venable staffed this case with only three attorneys (one New York counsel, one partner, and one associate) who each performed defined roles so as to provide significant economies of scale.

14. Accordingly, in my opinion, the amount of $51,920 in fees and $2,975.75 in costs (as of October 4, 2013) is reasonable.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge and belief.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge and belief.

_____
Michael C. Hartmere

Dated: October 16, 2013
    New York, New York