Yeskoo Hogan & Tamlyn, LLP
909 Third Avenue, 28th Floor
New York, NY 10022
908-464-8300
Attorneys for Plaintiff
By:  Richard C. Yeskoo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANASTASIA INTERNATIONAL, INC.,

                                                                                                   No. 1:13-cv-2919 (KBF)

                       Plaintiff,

      – against –

EM ONLINE PTY LTD d/b/a
ELENA'S MODELS and JUHA NATUNEN,

                     Defendants.
-----------------------------------------------------------------X

## RESPONSE OF ANASTASIA INTERNATIONAL, INC. TO
## EM ONLINE'S ATTORNEY FEE APPLICATION

Anastasia International, Inc. ("Anastasia") submits this opposition to the application of EM Online PTY Ltd. for attorneys' fees. There are four problems with EM Online's application: (1) there is no proof of the terms of the retainer agreement, that the bills attached to motion were ever sent, or that any of the bills were actually paid; (2) Vanable's work on the motion to vacate the default was completely unnecessary because Anastasia immediately told EM's counsel that it would be willing to vacate the default and timely did so; (3) there was significant duplication of work by Venable's senior attorneys; and (4) the Westlaw charges have been marked up at least fifty times over actual cost.

1

I.  EM ONLINE HAS NOT SUBMITTED ANY PROOF OF THE ACTUAL FEE AGREEMENT BETWEEN IT AND VENABLE

EM Online's fee application relies on the 'presumptively reasonable fee' approach set forth in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). This approach starts with evidence of the "negotiation and payment of fees" by the client. *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511 (S.D.N.Y. 2004). The affidavit submitted with the fee application is evasive as to the actual terms of Venable's engagement with EM Online. Its only description of the fee agreement with EM Online is as follows:

> "True and accurate copies of the relevant invoices are attached to this Declaration. They represent the legal fees and expenses that EM Online has incurred to date."

Hartmere Declaration (Docket No. 45), ¶ 7.

The fee application does not attach or describe Venable's retainer agreement with EM, identify which entity agreed to pay legal fees, state if the invoices were actually sent to EM, or state that any portion of the invoices were actually paid. The fee application therefore fails to meet the threshold issue of *Arbor Hill* in describing the actual fee agreement between Venable and EM Online.

II.  THE $12,183 BILLED FOR DRAFTING A MOTION TO VACATE THE DEFAULT WAS TOTALLY UNNECESSARY AND UNREASONABLE

Venable's billing records indicate that it first started working on this case on June 26, 2013. On June 27, 2013, its lead counsel, Damon Wright, called Anastasia's counsel, Richard Richard Yeskoo, to introduce himself. Mr. Wright asked Richard Yeskoo if Anastasia would be willing to vacate EM Online's default. Mr. Yeskoo said he would check with Anastasia, and emailed Mr. Wright later that day to inform him that Anastasia had agreed to vacate the default if EM Online provided substantiation that EM's principals were on an extended cruise. Yeskoo

2

Aff. Exh. 2.  Mr. Wright provided that proof on July 2, 2013 (Yeskoo Aff. Exh. 3), and Mr. Yeskoo wrote the Court on July 3, 2013 advising it that Anastasia had agreed to vacate the default.  (Yeskoo Aff. Exh. 5).

Notwithstanding Anastasia's agreement to vacate the default if EM Online provided proof that its principals were on a cruise, Venable spent 22.8 hours totaling $12,183 drafting a 17-page motion to vacate the default between June 27, 2013 and July 3, 2013.  Yeskoo Aff. Exh. 4.  It filed this motion after Anastasia had sent the Court a letter stating that it had agreed to vacate the default.  The fee application makes no attempt to explain why Venable spent so much time and money drafting a motion to vacate a default when Anastasia's counsel had told Venable it would vacate the default if EM Online corroborated its excuse for defaulting.  Legal work which is unneccesary or unreasonably expended cannot be included in a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933 (1983).  The Court should therefore disallow all of Venable's time ($12,183) spent on the unnecessary motion to vacate the default.

III.   VENABLE'S SENIOR ATTORNEYS BILLED UNREASONABLE AMOUNTS OF TIME FOR DUPLICATIVE WORK

Venable claims that its staffing of the case with a Washington, DC partner, New York counsel and Washington, DC associate provided "significant economies of scale" because each of the three attorneys "performed defined roles."  Its billing records indicate otherwise.

After the Court vacated the default, four things happened in the case.  First, EM made a motion to dismiss.  Docket # 24-25 .  Second, the parties attended a preliminary conference at which the Court stayed all discovery and granted Anastasia permission to amend its complaint.  Docket Entry for 8/2/13.  Third, Anastasia amended its complaint.  Docket # 30.  Fourth, EM Online renewed its motion to dismiss.  Docket # 33-36.  The second motion to dismiss was largely duplicative of the earlier motion.  Compare Docket # 36 with Docket # 18.

Venable states that the motions to dismiss were drafted by Mr. DePalma, a sixth year associate with impressive credentials and extensive litigation experience.  However, the billing records show that both senior attorneys, Mr. Wright and Mr. Hartmere, duplicated the work in reviewing and revising Mr. DePalma's drafts.  Mr. DePalma spent 10.7 hours drafting the first motion to dismiss; Mr. Wright spent 6 hours reviewing it and Mr. Hartmere spent 4.2 hours reviewing it.  Mr. DePalma spent 6.4 hours drafting the second motion to dismiss, which largely duplicated the first; Mr. Wright spent 1.6 hours reviewing it and Mr. Hartmere spent 6.8 hours reviewing it.  Mr. DePalma spent 6 hours drafting the reply; Mr. Wright spent 1.5 hours reviewing it and Mr. Hartmere spent 1.2 hours reviewing it.  In total, while Venable seeks $5,719.50 for Mr. Wright's work in reviewing Mr. DePalma's drafts; it also seeks $6,588 for Mr. Hartmere's work in reviewing the drafts.  See Yeskoo Aff. Exh. 7.

The same duplication is evident in the other work on the case.  Mr. Hartmere attended the preliminary conference and billed $2,916 for preparing for and attending the preliminary conference.  Yeskoo Aff. Exh. 8.  Putting aside the work on the motion to vacate, the motions to dismiss and the preliminary conference, Mr. Wright billed $4,059 for other work related to the case and Mr. Hartmere billed $4,059 for largely the same work.  Yeskoo Aff. Exh. 9.  While Venable claims that Mr. Hartmere handled "the day to day" matters in the case in New York, they were minimal.  The initial conversations about vacating the default took place with Mr. Wright and the work related to the preliminary conference has already been discussed.  There were no other court appearances and Mr. Yeskoo only had three other brief conversations with Mr. Hartmere, two related to possible settlement and one relating to whether it was necessary to

amend the complaint. See Venable billing entries for 7/15/13, 7/16/13 and 9/3/13, Docket # 45-5 and 45-7.

A court must deduct from a reasonable fee award duplicative time. *Hensley v. Eckerhart*, supra. A downward adjustment of at least $10,000 is therefore warranted for the duplicative time of the senior attorneys assigned to the case.

IV   VENABLE HAS SIGNIFICANTLY OVERBILLED ITS WESTLAW CHARGES

Venable seeks reimbursement of $2,975.75 in expenses. $2,924.50 of these are Westlaw (computerized research) charges. The Second Circuit allows reimbursement of computerized research (Westlaw) charges if they are "normally billed as costs" to clients. *Cesario v. BNI Const., Inc.*, No. 07CIV.8545, 2008 WL 5210209, *10 (S.D.N.Y. Dec 15, 2008). The fee application makes no representation as to Venable's normal practice regarding Westlaw charges. Moreover, Westlaw charges, if reimbursable, can only be recovered at the actual cost the law firm pays for the service. See *Invessys, Inc. v. McGraw-Hill Companies, Ltd.*, 369 F.3d 16, 22-23 (1st Cir. 2004) (charge for computerized research only recoverable if in fact paid to vendor). A firm cannot mark up its Westlaw charges and then ask an adversary to pay the inflated amount any more than it could charge $1,400 for sending a Fed Ex package that actually cost it $14.00.

Venable makes no representation that the Westlaw charges it seeks reimbursement for have been billed at cost, and without access to its billing agreement with Westlaw and bills it is impossible to determine what it actually pays for Westlaw. However, Westlaw's website explicitly states that it allows subscribers to generate reports of its Westlaw usage by client and to assign the subscriber's own billing rate to the usage. It calls this service Quickview+. See https://www.quickview.com/qvWelcome.aspx. Venable has produced Quickview+ type reports

to substantiate its claim for Westlaw expenses.  See eg, Docket No. 45-5, pp. 8 and 9.  Westlaw specifically disclaims on its website that:

> The rates used for QuickView+ calculations are based on rates designated by subscribers or on the applicable Westlaw rates, which may or may not reflect discounts and other charges (such as taxes).  **QuickView+ does not represent the subscriber's actual Westlaw charges**.

*Id*. (Emphasis Added).

The amount of Westlaw charges that Venable seeks reimbursement for is about 50 times the amount it would have cost Anastasia's counsel to perform the same research on Westlaw.  Mr. Yeskoo has subscribed to Westlaw for over 20 years.  His 3-person firm currently pays a flat fee of approximately $300 per attorney per month for unlimited Westlaw access to all federal and 50 state research materials.  With an average number of about 15 active litigation matters a month per attorney, Mr. Yeskoo's cost for unlimited federal and state research on a client matter each month is about $20.00 per client.[1]  Venable is a 1,000+ person firm and its buying power almost certainly means it pays substantially less for Westlaw services than small firms in the New York area.  Its request for reimbursement of marked-upWestlaw charges is patently unreasonable.

## Conclusion

Venable's fee application fails to meet the requirement of *Arbor Hill* because it fails to disclose what its actual fee agreement with EM Online is and what it has actually billed and been paid.  This raises the inference that it is seeking reimbursement for more fees than the client has agreed to pay.  The Court would be justified in disregarding the fee application in its entirety.

---

[1] Mr. Yeskoo's firm does not bill for Westlaw usage because it is a de minimus amount  per client.

In addition, the Court should make three downward adjustments to any fee award: $12,183 for unnecessary work on a motion to dismiss; $10,000 for duplicative work; and $2,924.50 for Westlaw charges not billed at cost.

Dated: October 23, 2013

>YESKOO HOGAN & TAMLYN, LLP
>Attorneys for Plaintiff
>909 Third Avenue, 28th Floor
>New York, New York 10022
>212-983-0900
>
>By: _s/_____
>        Richard C. Yeskoo