Yeskoo Hogan & Tamlyn, LLP
909 Third Avenue, 28th Floor
New York, NY 10022
908-464-8300
Attorneys for Plaintiff
By: Richard C. Yeskoo

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANASTASIA INTERNATIONAL, INC.,

                      Plaintiff,

      – against –

EM ONLINE PTY LTD d/b/a
ELENA'S MODELS and JUHA NATUNEN,

                      Defendants.
------------------------------------------------------------X

No. 1:13-cv-2919 (KBF)

**DECLARATION OF RICHARD C. YESKOO IN OPPOSITION TO FEE APPLICATION**

Richard C. Yeskoo, declares the following under penalty of perjury.

1.     I am a member of the bar of this Court and of Yeskoo Hogan & Tamlyn, LLP, counsel to plaintiff Anastasia Internaitional, Inc. ("Anastasia").

<u>The Agreement to Vacate the Default</u>

2.     Mr. Wright, EM Online's lead counsel, called me on June 27, 2013, to introduce himself and to ask if Anastasia would be willing to vacate EM Online's default. I told him that I would check with Anastasia. I confirmed this conversation in an email I sent to Mr. Wright that day. A copy of the email is annexed hereto as Exhibit 1. It states: "I have emailed the client about vacating the default. I should have an answer to you by Monday."

3.     After discussing the matter with the client, I emailed Mr. Wright back later on June 27, 2013. A copy of that email is annexed hereto as Exhibit 2. The email states: "I spoke

with our client. It is willing to vacate the default upon satisfactory proof that Elena Gold and her husband were on a cruise in Europe."

4. On July 2, 2013, Mr. Wright emailed me with the documents showing that the Golds were on a cruise. A copy of his email is annexed hereto as Exhibit 3. It states: "We understand that, with the benefit of these documents, your client is willing to vacate the default."

5. On July 3, 2013, I emailed Mr. Wright. A copy of the email is annexed hereto as Exhibit 4. It states: "We agree to vacate the default. I will send a letter to Judge Forrest today informing her of this."

6. On July 3, 2013 I sent the Court a letter informing it that Anastasia had agreed to vacate the default. A copy of the letter is annexed hereto as Exhibit 5.

7. Annexed hereto as Exhibit 6 is a spreadsheet which summarizes the time that Venable states it spent on a motion to vacate the default, and the amount it seeks for preparation of that motion. It was prepared from the bills attached to the fee application. Venable seeks a total of $12,183 for work for 22.8 hours between June 27, 2013 and July 3, 2013 preparing a 17-page long motion to vacate the default. EM Online filed this motion after I sent the Court a letter stating Anastasia agreed to vacate the default. Docket Nos. 16-18. There was no reason for Venable to draft this motion, because the issue of vacating the default was being worked out between counsel and would have, at most, required a pro-forma motion.

Spreadsheets Summarizing Venable's Work by Task

8. Annexed hereto as Exhibit 7 is a spreadsheet which summarizes the time that Venable states it spent on the motions to dismiss the complaint, and the amount it seeks for preparation of those papers. It was prepared from the bills attached to the fee application. Mr. DePalma spent 10.7 hours drafting the first motion to dismiss; Mr. Wright spent 6 hours

2

reviewing it and Mr. Hartmere spent 4.2 hours reviewing it. Mr. DePalma spent 6.4 hours drafting the second motion to dismiss, which largely duplicated the first; Mr. Wright spent 1.6 hours reviewing it and Mr. Hartmere spent 6.8 hours reviewing it. Mr. DePalma spent 6 hours drafting the reply; Mr. Wright spent 1.5 hours reviewing it and Mr. Hartmere spent 1.2 hours reviewing it. In total, Venable seeks $5,719.50 for Mr. Wright's work in reviewing Mr. DePalma's drafts; it seeks $6,588 for Mr. Hartmere's work in reviewing the drafts.

9. Annexed hereto as Exhibit 8 is a spreadsheet which summarizes the time that Venable states it spent preparing for and attending the preliminary conference. It was prepared from the bills attached to the fee application.

10. Annexed hereto as Exhibit 9 is a spreadsheet which summarizes almost all of the time that Venable states it spent on work other than the motions to vacate the default, to dismiss the complaint, and for work on the preliminary conference. It does not summarize all of the other time because certain entries were difficult to categorize.

Westlaw Charges

11. Venable seeks reimbursement of $2,975.75 in expenses. $2,924.50 of these are Westlaw (computerized research) charges.

12. Westlaw's website explicitly states that it allows subscribers to generate reports of its Westlaw usage by client and to assign the subscriber's own billing rate to the usage. It calls this service Quickview+. See https://www.quickview.com/qvWelcome.aspx. Venable has produced Quickview+ type reports to substantiate its claim for Westlaw expenses. See eg, Docket No. 45-5, pp. 8 and 9. However, Westlaw specifically disclaims on its website that:

> The rates used for QuickView+ calculations are based on rates designated by subscribers or on the applicable Westlaw rates, which may or may not reflect discounts and other charges (such as taxes). **QuickView+ does not represent the subscriber's actual Westlaw charges.**

*Id.* (Emphasis Added).

13. The amount of Westlaw charges that Venable seeks reimbursement for is about 50 times the amount it would have cost our firm to perform the same research on Westlaw. I have subscribed to Westlaw for over 20 years and am very familiar with its cost and the reports it offers to subscribers which enables them to charge clients for legal research time at any rate which the subscriber chooses. Our firm currently pays a flat fee of approximately $300 per attorney per month for unlimited Westlaw access to all federal and 50 state research materials. With an average number of about 15 active litigation matters a month per attorney, our per attorney cost for unlimited federal and state research on a client matter each month is about $20.00 per client. Because of the de-minimus nature of the Westlaw charge, our firm does not charge clients for Westlaw research. We stopped doing so when Westlaw switched to flat fee billing, which was over 10 years ago.

Dated: October 22, 2013

\_\_s/\_\_*[signature]*\_\_

Richard C. Yeskoo